**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MIYOUNG SON, *et al.*,                        *
         Plaintiffs
                         *

    vs.                        *                        Civil Action No.: AW-07-1060

                          *

KERZNER INTERNATIONAL
RESORTS, INC., *et al.*,                        *
         Defendants.

                    ******

## MEMORANDUM OPINION

This action involves claims for negligence and loss of consortium brought by MiYoung Son and Youngkeun Son ("the Sons" or "Plaintiffs") against Kerzner International Resorts, Inc. ("KIR"), Kerzner International Limited ("KIL"), Kerzner International North America, Inc. ("KINA")(collectively "Kerzner Defendants"), Nassau Cruises, Limited ("Nassau Cruises"), Robert Brown, Rodger Munroe, and Silven Brown (collectively "Secret Love Defendants"). Currently pending before the Court is the Kerzner Defendants' Motion to Dismiss for Lack of Jurisdiction, Improper Venue, and *Forum Non Conveniens* (Paper No. 8) and Plaintiffs' Motion for Limited Discovery (Paper No. 13). The Court has reviewed the entire record, including the Pleadings with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will grant Defendants' motion to dismiss and deny Plaintiffs' motion for limited discovery.

## FACTUAL & PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to Plaintiffs and are gleaned from Plaintiffs' Complaint and the various affidavits submitted by the parties. Plaintiffs are residents of Montgomery County, Maryland. KIR is a Florida corporation with its principle place of business

in Plantation, Florida.  KIL is a Bahamian corporation with its principle place of business in Paradise Island, Bahamas.  KINA is a Delaware corporation with its principle place of business in Linwood, New Jersey.  Nassau Cruises is a Bahamian company located in Paradise Island, Bahamas.  The Secret Love Defendants all reside in Nassau, Bahamas.

On July 26, 2005, Plaintiffs purchased a vacation package from the Kerzner Defendants which included a four-night stay at the Atlantis Hotel in the Bahamas beginning on August 17, 2005 and ending on August 21, 2005.  The Kerzner Defendants ran a national marketing campaign for their hotel packages which included advertisements on television stations, on Internet websites, and in emails.  Although the Kerzner Defendants had no offices, telephone listings, bank accounts, or employees in the state of Maryland, they also ran advertisements in the Baltimore Sun, a Maryland newspaper.  Plaintiffs chose to purchase the package as a result of advertisements in Maryland newspapers and on television stations.

On August 17, 2005, Plaintiffs, along with Youngkeun Son's sister and her family ("the Cheys"), arrived in Nassau and checked into the Atlantis Hotel.  Upon checking in, MiYoung Son signed a document entitled "Acknowledgment, Agreement, and Release."  The first paragraph of the document, in bold lettering, notified hotel guests that all "motorized watersport activities" are offered by independent service providers that are not affiliated with the Atlantis Hotel or its partners.  Shortly after checking in, Mr. Chey visited the "Tour and Excursion Center" located in the Atlantis lobby.  He booked a fishing excursion for Plaintiffs and his family on Nassau Cruises for the morning of August 19, 2005.

On August 19, 2005, the Cheys and Plaintiffs met the Secret Love Defendants, followed the Secret Love Defendants aboard  Nassau Cruises' "Secret Love," and began their fishing excursion.

At some point during the fishing trip, the vessel ran aground.  The Secret Love Defendants asked the Cheys and Plaintiffs to assist them in repositioning the boat.  Without warning anyone, Defendant Silvin started the Secret Love's engine.  The force of the propellers caused the sandy floor underneath Youngkeun Son's feet to give way and she was sucked under the boat and through the propellers, resulting in serious injury.  As a result of the above incident, Plaintiffs are seeking negligence and loss of consortium claims against all defendants.

## STANDARD OF REVIEW

"When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs., Inc. v. Akzo,* 2 F.3d 56, 59-60 (4th Cir.1993)(citing *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989)); *Dowless v. Warren-Rupp Houdailles, Inc.,* 800 F.2d 1305, 1307 (4th Cir.1986).  When, however, as here, the district court decides a pretrial personal jurisdiction dismissal motion without conducting an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction.  *Mylan*, 2 F.3d at 60 (citing *Combs*, 886 F.2d at 676).  The Court must resolve all factual disputes and make all reasonable inferences in favor of the plaintiff. *Id. (*citing *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctr., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

## DISCUSSION

### A.  Personal Jurisdiction

A federal district court may only exercise jurisdiction over a non-resident defendant in the manner and extent authorized by state law in the forum state unless a federal statute establishes an

alternative basis for exercising personal jurisdiction. *See* Fed. R. Civ. P. 4(k); *ePlus Tech. v. Aboud*, 313 F.3d 166, 175 (4th Cir. 2002).   Thus, in a diversity case, a federal court only has personal jurisdiction over a party if a state court in the federal court's forum state would have personal jurisdiction. *Copiers Typewriters Calculators, Inc v. Toshiba*, 576 F. Supp. 312, 318 (D. Md. 1983). To evaluate whether personal jurisdiction exists in a diversity case, a federal court will engage in a two-part analysis.   First, the court will determine whether the state long-arm statute authorizes the exercise of jurisdiction in the particular circumstances presented.   Second, if the court finds that the long-arm statute permits the court to exercise jurisdiction, the court must then consider whether such an exercise of jurisdiction comports with the due process standards of the Fourteenth Amendment. *Carefirst*, 334 F.3d at 396; *Christian Sci. Bd. of Dir. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001);  *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993).

1.  Maryland Law on *In Personam* Jurisdiction

Because Plaintiffs filed this action in federal court in Maryland, this Court must first examine whether it may exercise personal jurisdiction over the defendants under Maryland law.  Maryland's long-arm statute provides, in pertinent part:

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
> (1)     Transacts any business or performs any character of work or service in the State;
> (2)     Contracts to supply goods, food, services, or manufactured products in the State; . . .
> (4)     Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed

4

in the State . . .

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(2006).  Courts have interpreted Maryland's long-arm statute as coterminous with the limits of the Due Process Clause of the Fourteenth Amendment.  *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).  Therefore, "the statutory inquiry necessarily merges with the constitutional inquiry and the two inquiries become one."  *Id.*

The exercise of personal jurisdiction over a non-resident defendant comports with the Due Process Clause only where the defendant has certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted); *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 941-42 (4th Cir. 1994).  As explained in *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997), the jurisprudence of minimum contacts developed to determine whether a defendant had a surrogate presence in the state.  *Id.* at 623.  Thus, a court must focus its inquiry on whether "a defendant's contacts with the forum state are so substantial that they amount to a surrogate for presence and . . . render the exercise of sovereignty just, notwithstanding the lack of physical presence in the state."  *Id.*  Where a defendant purposefully availed himself of the privilege of conducting business in a particular forum, the defendant has sought both the benefits and protections of that state's laws.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  In such situations, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."  *Id.*; *see also Foster v. Arletty 3 Sarl*, 278 F.3d 409, 415 (4th Cir. 2002).

In considering the question of personal jurisdiction, the Supreme Court has drawn a

distinction between "specific" and "general" jurisdiction.   *See Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 (1984).  Specific jurisdiction exists where a suit "arises out of" a defendant's contacts with the forum state.  *Id.*   General jurisdiction, which permits a court to subject a non-resident defendant to a suit in the forum wholly unrelated to any contact it has with the forum, exists only where a foreign defendant's in-state activities amount to "continuous and systematic" contact with the state.  *Id.* at 414-15.  The level of contact required for the exercise of general jurisdiction is significantly higher than that required for specific jurisdiction.  *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997).

2.  General Jurisdiction

Plaintiffs have produced nothing to dispute the fact that the Kerzner Defendants have no offices, telephone listing, or employees in Maryland.  Although Plaintiffs claim that discovery would uncover evidence of the Kerzner Defendants' presence in Maryland, the fact that the Kerzner Defendants ran only nine ads over a one-month period in a Maryland newspaper indicates that Defendants had little connection with the state.  Plaintiffs suggest that the nine advertisements that ran in the Baltimore Sun between October 19, 2005 and November 20, 2005 were sufficiently "continuous and systematic" to sustain general jurisdiction over Defendants.  This contact falls drastically short of the type of systematic conduct needed to confer general jurisdiction over these Defendants.  *See People's Tobacco Co. v. American Tobacco Co.*, 246 U.S. 79, 87 (1918) (holding that advertising and solicitation alone do not justify general jurisdiction).

Plaintiffs also contend that discovery will provide evidence that Defendants had employees living and working in Maryland at the time of Plaintiff's boating accident.  However, even if discovery would reveal the fact that Defendants had employees in Maryland at the time of

Youngkeun Son's accident, a substantial sales force within a state is not a sufficient contact to sustain general jurisdiction over a defendant. *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993) (citing *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir. 1984)).   Therefore, Plaintiffs have not established that this Court can exercise general jurisdiction over Defendants.

3.  Specific Jurisdiction

Plaintiffs also rely on the Kerzner Defendants' advertising and marketing activities to allege that specific jurisdiction is proper.   Plaintiffs contend that the email, Internet, and television advertisements in Maryland were purposeful acts on the part of Defendants which give this Court personal jurisdiction over Defendants under the Maryland long-arm statute.   There is no indication that the Kerzner Defendants in any way deliberately targeted consumers in Maryland with the email, Internet, and television advertisements.   Defendants' advertising efforts were made on a national scale and were not directed specifically at Maryland. *See IMO Industries, Inc. v. SEIM s.r.l.*, 2006 WL 3780422 *3 (W.D.N.C. 2006) (citing *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (finding that the mere act of placing an advertisement in a nationwide magazine will not confer personal jurisdiction).   As a result, Defendants' email, Internet, and television advertisements do not satisfy the minimum contacts requirement for personal jurisdiction.

Plaintiffs also contend that the nine Baltimore Sun advertisements are an indication that the Kerzner Defendants specifically targeted Maryland residents.   Plaintiffs argue that they relied on the Sun advertisements when they called the Atlantis phone number to make reservations for their vacation.   Even if the Baltimore Sun advertisements are sufficient proof that the Kerzner Defendants

7

initiated the contact with Maryland residents, the resulting contract between the Kerzner Defendants and Plaintiffs had little, if nothing, to do with Maryland. *See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 452 (4th Cir. 2000) (finding that specific personal jurisdiction is not proper in the absence of a contract that is substantially connected to the forum). Even if the instant reservation allegedly resulted from the Kerzner Defendants' Baltimore Sun advertisements, the contract called for performance in the Bahamas, not in Maryland. Even though the Kerzner Defendants had some contact with the forum when they advertised in the Baltimore Sun and accepted payment from Maryland residents, the resulting contract has a negligible connection with the state of Maryland. *See Le Bleu Corp. v. Standard Capital Group, Inc.*, 2001 WL 672066 * 2 (4th Cir. June 15, 2001) (finding that a contract with a forum state resident does not automatically constitute sufficient contacts to support the forum's assertion of specific jurisdiction, especially where the contract has a negligible connection to the forum); *CEM Corp. v. Personal Chemistry AB*, 192 F. Supp. 2d 438 (W.D.N.C. 2002) (same)). Furthermore, the advertisement promoted a package that included airfare to the Bahamas and hotel rooms at the Atlantis Hotel. It did not include motorized activities such as the fishing excursion.

The second prong of the specific jurisdiction test requires that the cause of action arise out of or directly relate to the Defendant's activities in the forum state. *See Netalog, Inc. v. Tekkeon, Inc.* 2007 WL 534551 * 2 (M.D.N.C. February 15, 2007)(citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995)). Assuming, arguendo, that the Kerzner Defendants' Baltimore Sun advertisements and resulting contract with Plaintiffs satisfied the minimum contacts requirement, Plaintiffs cannot satisfy the second requirement for specific personal jurisdiction that the suit "arises out of" Defendants' contacts with Maryland.

Plaintiffs' allegations that their claim arises out of the Baltimore Sun advertisements fails under the second prong. The advertisements in the Baltimore Sun promoted airfare and hotel accommodations. Plaintiffs did not book the fishing excursion when they booked the their Atlantis vacation. They did not book the excursion until after arriving at the Atlantis Hotel and after signing the notice regarding the independent service providers.

Plaintiffs next allege that the Kerzner Defendants failed to adequately investigate its tour service providers and failed to adequately inform guests that such service providers were independent of the hotel and its affiliates. Plaintiffs claim that but for their reliance on the Kerzner Defendants' apparent affiliation with Nassau Cruises, they would not have purchased the fishing tour. While this contention may be true, Plaintiffs had adequate notice of the independent nature of the tour service providers. Upon checking into the Atlantis Hotel, Plaintiff MiYoung Son signed an Acknowledgment, Agreement, and Release waiver. The first paragraph of the waiver, in bold lettering, notified hotel guests that all motorized sports service providers were "independent and not affiliated with the Atlantis Resort" and its affiliates. Since Plaintiffs had adequate notice of the relationship, or lack thereof, between the Kerzner Defendants and Nassau Cruises, this suit does not arise out of the Kerzner Defendants' contacts with Maryland. As a result, Plaintiffs reservation at the Atlantis resort is not related to Plaintiffs' choice to use Nassau Cruises as a tour provider.

Assuming that Plaintiffs were able to satisfy the minimum contacts prong and the direct relationship prong, the Kerzner Defendants would meet their burden of presenting a compelling case that the exercise of jurisdiction over them would be unreasonable. Defendants did little, if anything, to purposefully avail themselves of the privilege of conducting activities within Maryland. They placed an advertisement in the newspaper on nine occasions over a one-month period, and they

accepted Plaintiffs' payment for the vacation registration.  The Supreme Court has set forth factors to be considered in determining whether the exercise of personal jurisdiction over a non-resident defendant would be fair. These include the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering fundamental substantive social policies. *See Sun Trust Bank v. Sun International Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1272 (S. D. Fla. 2001) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

This case is distinguishable from many cases involving Bahamian hotels defendants and United States plaintiffs.  In each of the cases that Plaintiffs cited in their memorandum, the suit was brought in Florida, a state in which each Bahamian hotel had significant contacts.  *See Ward v. Kerzner International Hotels Ltd.*, 2005 WL 2456191 (S. D. Fla. March 30, 2005) (suit brought by Georgia resident in Florida for bicycle injury on Kerzner property); *Sun Trust Bank v. Sun International Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1272 (S. D. Fla. 2001) (Florida resident brought suit in Florida for death on Kerzner property); *Doe v. Sun International Hotels, Ltd.* 20 F. Supp. 2d 1328 (S. D. Fla. May 20, 1998) (suit brought in Florida for injury that occurred on Bahamian hotel property); *Doe v. Sun International Hotels, Ltd.*, 1999 WL 639816 (S. D. Fla. February 9, 1999) (suit brought in Florida for an injury that occurred on Bahamian hotel property).  In each of those cases, the court found that the burden on the Bahamian hotel was not significant since the hotel had significant ties with the state of Florida and Florida was only a short distance from the Bahamas. In this case, however, the only contact the Kerzner Defendants had specifically with Maryland were the nine Baltimore Sun advertisements.  Also, the distance between the Bahamas and Maryland is

far greater than the distance between the Bahamas and Florida.

While Maryland has an interest in providing its residents a fair forum in which to litigate disputes, its interest lessens when its residence are the only aspect connecting Maryland with the litigation and where there exists an adequate forum with deeper interests in the litigation. The injury to Ms. Son occurred in the Bahamas, the defendants reside in the Bahamas, all of the relevant documents received final signature in the Bahamas, and a majority of the witnesses reside in the Bahamas. Maryland's choice of law rules, dictated by the *lex loci delicti* approach, require that where the events giving rise to a tort action occur in more than one State, Maryland applies the law of the State where the injury occurred. *See Philip Morris, Inc. v. Angeletti*, 752 A.2d 220, 230-32 (Md. 2000) (citing *Hauch v. Connor*, 453 A.2d 1207, 1209-1215 (Md. 1983)); *Sherrod v. Achir*, 817 A.2d 951 (Md. Ct. Spec. App. 2003) (finding that Maryland choice of law rules provide that when analyzing tort actions, the substantive tort law of the place where the wrong occurred controls). For this Court to apply Bahamian law would hardly further the "efficient resolution of controversies." *See Foster v. Arletty 3 Sarl*, 278 F.3d 409 (4th Cir. 2002) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). Additionally, the Bahamas is an adequate forum. *See Ward*, 2005 WL 2456191; *Sun Trust Bank*, 184 F. Supp. 2d 1246. Maryland's relatively small interest in this litigation as compared to that of the Bahamas indicates that the Bahamas would be a better forum to achieve the most efficient resolution of the controversy. Therefore, Plaintiffs have failed to establish a sufficient basis for this Court's exercise of personal jurisdiction over these Defendants.[1] As such, Plaintiffs' Amended Complaint must be dismissed.

---

[1] Plaintiffs have also failed to establish this Court's ability to exercise personal jurisdiction over the Secret Love Defendants. As such, Plaintiffs Amended Complaint will be dismissed as to all Defendants.

**B.  Limited Discovery**

In addition to opposing Defendants' motion to dismiss, Plaintiffs request leave to conduct limited discovery on the jurisdictional issue.  In support of their discovery motion, Plaintiffs contend that there are significant gaps in the record.  Specifically, Plaintiffs claim that there may be relevant facts out there that would allow this Court to pierce the corporate veil in order to exercise jurisdiction over these Defendants.  The crux of Plaintiffs' argument seems to be the potential existence of an agency relationship that may give rise to personal jurisdictional.  However, Plaintiffs contentions are not supported by the record.

Plaintiffs' motion attacks what Defendants' affidavits do not address, while minimizing what the affidavits do set forth.  Plaintiffs do not address the fact that: 1) Defendants have no offices in Maryland; 2) Defendants do not operate, conduct or engage in business or a business venture in Maryland; 3) Defendants do not have employees in Maryland; 4) Defendants do not own property in Maryland; 5) Defendants have no bank accounts in Maryland; or 6) Defendants' principal places of business are in Florida and/or the Bahamas.  *See* Aff. of Giselle M. Pyfrom.  Plaintiffs do not address the facts in the Frake Affidavit that strongly suggest that Defendants' Internet advertising and solicitation did not have the manifest intent of targeting Maryland residents.  *See* Aff. of Laurie Frake.  Beyond conclusory allegations and mere speculation, Plaintiffs have not proffered a sufficient factual basis to overcome what the record reflects.  Further, Plaintiff has failed to set forth any specific or cognizable proffer to support te request for limited discovery.  Therefore, this Court will deny the motion for limited discovery.  *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir.  2003) (affirming the district court's denial of limited discovery "in light of [the defendant's] specific affidavits and the lack of any concrete proffer by

[the plaintiff]").

## CONCLUSION

For all of the reasons stated above, the Court will GRANT Defendants' Motion to Dismiss for Lack of Jurisdiction (Paper No. 8) and DENY Plaintiffs' Motion for Leave to Conduct Limited Discovery (Paper No. 13).  An Order consistent with this Opinion will follow.

Date:   <u>April 27, 2007</u>                                          <u>            /s/            </u>
                                                                                   Alexander Williams, Jr.
                                                                                   United States District Judge